25788. SWEARENGEN *v.* THE STATE.

DECIDED SEPTEMBER 22, 1936.

*H. H. Elders,* for plaintiff in error.
*J. P. Dukes, solicitor-general,* contra.

MACINTYRE, J. The indictment charged Levi Swearengen with committing the crime of murder by assaulting and killing Talmadge Boyett with an automobile. Swearengen was convicted of involuntary manslaughter, and his exception is to the overruling of his motion for new trial containing only the general grounds.

About eight o'clock at night Cleotus Hare and Boyett stopped the automobile in which they were riding on the highway between Collins and Reidsville, in Tattnall County, Georgia, to fix their headlights, which were burning low. Hare's version of the homicide is substantially as follows: "Our car was headed north, and parked on the right side of the road. Levi Swearengen was . . traveling in the same direction we were. . . Our car was parked six inches to the right of the center of the road. . . He did not go around and leave us to the right of him. He run out into the ditch to the right of our car. At the time he went around the car, Talmadge . . was standing just to the right of our car, . . right up near the car. He was about the front door of the car when the car passed ours. He was standing there, and this man came around the wrong side of the car and struck him. . . It carried the body of Talmadge about fifteen yards. . . Talmadge's body fell off the car, and then it traveled about seventy-five yards. . .. Talmadge was standing by the running-board when the car struck him. . . That road is straight back where Swearengen was coming, for a distance of two or three hundred

yards; . . the road is level at that point. Swearengen came back to where the boy was hit. . . I smelled his breath, and it indicated whisky. . . He did not tell me why he went to the wrong side of the road, or into the ditch. He did not explain his actions at all. He did not do anything right when he came back. He and I carried Talmadge away from there in Swearengen's car. . . The public road is thirty feet wide there. . . It is a good hard road from ditch to ditch. . . About fifteen feet of it is clayed in the center of the road. . . We did not have any tail light on our car. . . The right-hand wheel of our car was about a foot from the left-hand wheels of Swearengen's car when it passed, a foot or six inches. . . He [defendant] was talking loud, but wasn't cursing. . . The Swearengen car ran . . seventy-five yards after striking Boyett, before it stopped. It dragged him fifteen or twenty feet. The Swearengen car was traveling forty or fifty miles per hour. There was no object between our car and Swearengen's car as it was approaching. . . It was dark. . . I am just estimating the speed. . . I determined the speed of that car by the sound of the motor, and because the fellow was drunk."

James L. Holland thought that the deceased "was making an effort to get further from the parked car as he was hit." Referring to a driveway on the right side of the road, Holland swore: "If a man was driving a car along there and had the car under control, with ordinary lights, he could have seen that car in time to have turned up that driveway and not have passed the car at all, but, at a rapid rate of speed, I don't think he could have made the turn out there without turning over." This witness was not at the scene of the tragedy until the following day. He also testified: "From the signs and observations there and the distance this car traveled after crossing this ditch, . . I would say this car was traveling between forty and fifty miles per hour."

Dr. C. J. Collins testified to the effect that shortly after the accident he smelled whisky and thought the odor of it emanated from the defendant's breath, but that no one was acting as if he was drunk. Cleotus Hare, recalled for the defendant, testified that the defendant told him shortly after the accident that "he could not help Talmadge jumping in front of the car." Clarence Smith, chief of police of Reidsville, testified that the defendant

"drank a right smart," and witness "had seen him driving a car when he was drinking."

H. L. Collins, for the defendant, testified, in part, to the effect that he cashed a check for the defendant about dark on the day of the accident, and did not smell any whisky on him; that the defendant's car was "traveling at a fast rate of speed;" that "the parked car was on the proper side of the road;" that Swearengen "could have passed the parked car on the proper side and left the parked car to the right;" that "there was plenty of room on the clayed part of the road for a car to have passed to the left of the parked car without hitting the ditch or anything;" and that "there was something like nine feet from the parked car to the edge of the shoulder of the road on the left."

Craig Cox, who was in the car with the defendant when the homicide occurred, testified that "it was dark;" that there was no liquor in the car; that "Norwood said, 'Look out, Levi, there's a car coming;'" that "Levi turned to the right to miss the car;" that the deceased "was right even with the parked car, . . and Levi kept turning to the right, and this boy kept coming out in front of the lights," and "looked like he didn't know which way to go and just jumped or stumbled out in front of the lights;" that witness "saw him come from in front of the car, and he kept coming until . . the fender and lamp struck him;" that defendant's car was traveling "about thirty-five miles per hour;" that "after the car hit the boy, Levi started slowing down, trying to stop," and witness "thought he stopped as soon as he could;" that the brakes on Swearengen's car "wasn't so good that night;" that Swearengen had owned the car about four months and driven it; and that witness "would say that he didn't have two good lights throwing a visible beam for a distance of ninety feet in the direction which it was going."

In his statement to the jury the defendant said, in part, that he was "going along about thirty-five or thirty-seven miles per hour" when Davis said, "Look out, there comes a car with no lights;" that defendant turned to the right, but the deceased "come out from in front of the automobile;" that defendant "tried to pull around him and go back in the road, and he jumped into the fender;" that "both lights were burning, but you couldn't see as far down the road as you could with a new-model automobile like they have to-day;" and that "it was unavoidable accident."

"Involuntary manslaughter shall consist in the killing of a human being without any intention to do so, but in the commission of an unlawful act, or a lawful act, which probably might produce such a consequence, in an unlawful manner." Code, § 26-1009. "All vehicles not in motion shall be placed with their right sides as near the right side of the highway as practicable. . . " § 68-303(a). "An operator of a vehicle overtaking another vehicle going in the same direction, and desiring to pass the same, shall pass to the left of the vehicle overtaken." § 68-303 (d). No person shall operate a motor vehicle upon any public highway of this State at a rate of speed greater than forty miles per hour. § 68-301. "Every motor vehicle, . . while in use or operation upon the streets or highways, shall at all times be provided and equipped with efficient and serviceable brakes. . . Every motor vehicle using the highways at night shall be equipped with a lamp or lamps clearly visible for a distance of not less than 100 feet from the front and rear." § 68-302. "No person shall operate a motor vehicle . . upon any public street or highway . . while under the influence of intoxicating liquors or drugs." § 68-307. Under the facts of this case it was for the jury to decide whether the homicide was "an unavoidable accident," as contended by the defendant, or whether it was involuntary manslaughter in the commission of an unlawful act. The jury reached the latter conclusion, and the evidence supports it. Therefore this court declines to reverse the judgment of the trial court.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*